# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PROFESSIONAL ENGINEERING
ASSOCIATES, INC.,

       Plaintiff,                                 Case No.  2:23-cv-10967

v.

ZIAD N. KAAKOUCH, and
Z.K. CONSULTING SERVICES, LLC,

       Defendants.

_____

Stuart Schwartz (P62752)
Taft Stettinius & Hollister LLP
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
(248) 351-3000
SSchwartz@taftlaw.com
*Attorneys for Plaintiff*

_____

## <u>VERFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>

Plaintiff, Professional Engineering Associates, Inc. ("PEA"), by its attorneys,

Taft Stettinius & Hollister LLP, for its Complaint against Defendants Ziad N.

Kaakouch ("Kaakouch") and Z.K. Consulting Services, LLC ("ZCS") (Kaakouch,

with ZCS, collectively, "Defendants"), alleges as follows:

4881-9651-2862

## INTRODUCTION

1.      This is an action to enforce (and obtain other relief with respect to) the restrictive covenants contained in a material agreement between PEA and Defendants.

2.      PEA provides civil engineering and complimentary professional service offerings integral to land development and construction projects. PEA has offices throughout Michigan. PEA also has an extension office in Houston, Texas that was initially established through the purchase of another engineering firm. PEA's website - containing this and other pertinent information - can be accessed at *www.peagroup.com*.

3.      On March 31, 2021, Kaakouch, as a putative seller, and PEA, as purchaser, entered into an asset purchase agreement whereby PEA purchased many of the assets compromising ZCS, as Kaakouch's engineering firm (the "Purchase Agreement"). The Purchase Agreement is attached to this Complaint as **Exhibit A**. ZCS, as a seller, is also a party to the Purchase Agreement. ZCS was and is owned entirely by Kaakouch.

4.      PEA's acquisition of ZCS's assets, and PEA's corresponding association with Kaakouch, provided PEA's Houston office with additional resources and professional depth to service clients with projects in Texas and other markets in the southwestern United States.

5.      Under the Purchase Agreement, Kaakouch and ZCS, each and both directly and indirectly, agreed to certain express contractual non-competition, non-solicitation, and non-disclosure restrictions, as is common in such transactions.

6.      At or around the time of the Purchase Agreement, PEA also hired Kaakouch as a Regional Business Director responsible for the management and operation of PEA's Houston office. In doing so, PEA gave Kaakouch a generous executive-level compensation and benefits package, as well as an opportunity to purchase shares in PEA.

7.      On or about March 8, 2023, after two (plus) years as PEA's Regional Business Director and the ostensible chief executive of PEA's Houston office, Kaakouch voluntarily resigned from his employment with PEA.

8.      After receiving notice of Kaakouch's resignation, PEA provided him with an express written reminder of the operative restrictive covenants governing his post-employment conduct. Despite this reminder, PEA learned that, shortly after his resignation from PEA, Kaakouch formed Z & Co., LLC ("ZC"), as his own engineering firm, to directly compete with PEA. Shortly thereafter, Kaakouch also expressly notified PEA that he had no intention of abiding by the restrictive covenants in the Purchase Agreement. Thereafter, PEA and Kaakouch, through their respective counsel, engaged in a dialogue regarding the parties' respective positions, including to see if a resolution of the dispute could be achieved short of litigation.

9.      Without any advance notice to PEA and/or its counsel, however, Kaakouch filed a Complaint against PEA in Harris County, Texas seeking a judgment declaring the restrictive covenants in the Purchase Agreement unenforceable as a matter of law, principally because he claims them to be "superseded" by his joinder to PEA's shareholder agreement (the "Texas Lawsuit").

10.     The Texas Lawsuit is both procedurally and substantively infirm and meritless, including inasmuch as (a) Kaakouch filed it in Texas state court in direct contravention (and in knowing disregard) of the express jurisdictional provision in the Purchase Agreement, and (b) it completely ignores or disregards basic and fundamental principles of contract interpretation.

11.     As of this filing, PEA has removed the Texas Lawsuit to the United States District Court for the Southern District of Texas. PEA has also filed (or will be filing) a Motion to Dismiss the Texas Lawsuit under the mandatory forum-selection clause in the Purchase Agreement, or alternatively, to transfer it to this Court.

12.     ZC is operational and actively competing against PEA. As of this filing, ZC maintains a website; it purports to have physical office space; and it obtained separate licensure as a professional engineer.

13.     Kaakouch is the owner and President of ZC, and he is otherwise managing its business and operations. Given its ownership constitution, and

operational structure, ZC appears to be nothing more than a different name for the business Kaakouch operated as ZCS.

14.     In addition to the actions taken in direct competition with PEA, Kaakouch recently solicited at least two of PEA's now former employees to work for ZC, and he is continuing to solicit and recruit several of PEA's other employees.

15.     Upon information and belief, Kaakouch has also actively and directly solicitated at least two of PEA's current clients (both of which are listed as ZC's current clients on ZC's website).

16.     Based on the foregoing conduct, and as otherwise alleged herein, PEA brings this action to immediately enforce Defendants' restrictive obligations under the Purchase Agreement.

**JURISDITION AND VENUE**

17.     PEA is a Michigan corporation with a principal place of business at the common address of 1849 Pond Run, Auburn Hills, Michigan. PEA is thus only a Michigan citizen for purposes of establishing diversity jurisdiction in this action.

18.     Kaakouch is an individual and a Texas resident domiciled in Texas. He is thus only a Texas citizen for purposes of establishing diversity jurisdiction in this action.

19.     ZCS is a Texas limited liability company with a principal place of business in Texas. Kaakouch is the sole owner and member of ZCS. ZCS is thus a Texas citizen for purposes of establishing diversity jurisdiction.

20.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332, as (a) there is complete diversity of citizen between PEA, on the one hand, and Defendants, on the other hand, and (b) the amount in controversy is well in excess of $75,000, exclusive of non-contractual interest and costs.

21.     This Court has personal jurisdiction over Defendants because they consented to the exclusive jurisdiction of this Court (and the Courts of the state of Michigan) for any action arising out of or relating to the Purchase Agreement. (**Exhibit A**, at §14.4.)

22.     Venue is proper because Defendants waived any objection to venue in any action arising out of or relating to the Purchase Agreement brought in this Court or any of the courts of the state of Michigan, and it is otherwise proper under governing statute (*Id.*)

## FACTUAL ALLEGATIONS

### *The Parties' Purchase Agreement*

23.     Before working for PEA, Kaakouch owned and operated ZCS, a Texas-based civil engineering firm that focused on land and site development.

4881-9651-2862                                           6

24.     On or around March 31, 2021, PEA entered into the Purchase Agreement with Defendants.

25.     Under the Purchase Agreement, PEA purchased from Defendants certain tangible and intangible property, business goodwill, and other assets.

26.     Under the Purchase Agreement, PEA paid Defendants cash consideration, and it further assumed responsibility for certain of Defendants' troubled projects. Notably, the troubled projects had significant unrecoverable liabilities associated with them.

27.     The Purchase Agreement is governed by Michigan law. (*Id.* §14.4.)

28.     In Section 10.1 of the Purchase Agreement, each of the Defendants agreed to several restrictive covenants, including non-competition, non-solicitation, and/or non-disclosure provisions (the "Restrictive Covenants").

29.     The Restrictive Covenants expressly prohibit Defendants, either directly or in concert with others, from, among other things, but most material to this action:

      a.     soliciting PEA's clients or suppliers;

      b.     soliciting or approaching for the purposes of offering employment, or actually hiring, PEA's employees;

      c.     competing with PEA in the state of Texas or any other area in which PEA operated at the time of closing; and/or

      d.     using or disclosing any nonpublic information concerning ZCS.

(*Id.* at § 10.1.A-C.)

4881-9651-2862                          7

30.     More specifically, the Purchase Agreement provides:

A.     For a period of five (5) years from the date hereof, none of Seller (*i.e.*, **ZCS**) or the Shareholders (*i.e.*, **Kaakouch**) (collectively, the "Restricted Parties") shall, directly or indirectly: (i) enter into or engage in competition with Purchaser (*i.e.*, **PEA**) within the State of Texas or any other geographic area in which Seller conducts the Business as of the Closing (the "Restricted Territory"); (ii) contact or solicit, directly or indirectly, any client or supplier of Purchaser for the Restricted Parties own behalf or otherwise on any matter relating to the Business; or (iii) own, manage, operate, control, enter into a joint venture with, participate in or be connected in any manner with the ownership or operation or control of any business or venture in the Restricted Territory which competes in any manner with Purchaser or otherwise engages in the Business.

B.     For a period of five (5) years from the date hereof, none of the Restricted Parties shall, directly or indirectly, contact, approach or solicit for the purpose of offering employment to (whether as an employee, leased employee, consultant, agent, independent contractor or otherwise) or actually hire any person who provides services to the Purchaser on or after the date of this Agreement (either as an employee, leased employee, consultant, independent contractor or otherwise).

C.     From and after the Closing, Seller and the Shareholders shall hold in confidence any and all information, whether written or oral, concerning the Business, except to the extent that Seller or the Shareholders can show that such information (a) is generally available to the public through no fault of Seller, the Shareholders or their respective representatives; or (b) is lawfully acquired by Seller, the Shareholders or their respective representatives from and after the Closing from sources which are not prohibited from disclosing such information by a legal, contractual or fiduciary obligation. If Seller, the Shareholders or their respective representatives are compelled to disclose any information by judicial or administrative process or by other requirements of law, Seller or the Shareholders, as applicable, shall promptly notify Purchaser in writing and shall disclose only that portion of such information which Seller or the Shareholders are advised by their counsel in writing is legally required to be disclosed, provided that Seller or the Shareholders, as applicable shall use their

best efforts to obtain an appropriate protective order or other reasonable assurance that confidential treatment will be accorded such information.

(*Id.*) (clarification added in bold at the first references to identify, by name, the actual parties specified in the corresponding defined terms under the Purchase Agreement).

31.     Defendants acknowledged and agreed that: (i) the Restrictive Covenants are reasonably limited in time and all other respects; (ii) the Restrictive Covenants were reasonably necessary to protect PEA's interests; and (iii) PEA would not have entered the Purchase Agreement but for Defendants' acceptance of the Restrictive Covenants. (*Id.* § 10.1.D.)

32.     Defendants further acknowledged and agreed that, in the event of his breach of the Restrictive Covenants, money damages would be inadequate to fully compensate PEA such that it would have no adequate remedy at law. (*Id.* §10.1.E.)

33.     Accordingly, in the event of any actual or threatened breach of any of the Restrictive Covenants, the parties agreed that PEA would be entitled to injunctive relief to enforce or prevent any violations of the Purchase Agreement. (*Id.*)

34.     The Purchase Agreement also provides PEA with the right to obtain its costs and reasonable attorneys' fees to the extent it prevails in any action to enforce PEA's rights under same. (*Id.* § 14.14.)

### *Kaakouch's Employment with PEA*

35.     At or around the time of the Purchase Agreement, PEA hired Kaakouch to serve as PEA's Regional Business Director and manage PEA's office in Houston, Texas.

36.     Kaakouch was given substantial authority and compensation in this role.

37.     During the time he served as Regional Business Director, Kaakouch was the highest compensated person in PEA's Houston office—in fact, he had the highest salary in the entire company.

38.     Along with cash compensation and other benefits, PEA also offered Kaakouch the opportunity to become a shareholder in PEA, and from this, he purchased a minority ownership interest in PEA.

39.     During the term of his employment with PEA, Kaakouch became familiar with various nonpublic information related to PEA, including proprietary and confidential information regarding PEA's cost structure, PEA's hourly rates and other pricing models, the details of PEA's ongoing and closed projects, compensation paid to PEA's employees, contract terms between PEA and its vendors and/or suppliers, and PEA's client relationships.

40.     Kaakouch also worked with PEA's other employees during this time, including but not limited to Wendy Woods ("Woods").

41.     In addition, Kaakouch worked directly with several of PEA's clients, including a regional car wash owner and regional car dealer.

### *Kaakouch Resigns and Starts a Competing Business*

42.     On or around March 8, 2023, Kaakouch resigned from PEA.

43.     Notwithstanding his resignation, Kaakouch continued to receive compensation from PEA through March 24, 2023.

44.     On or around March 13, 2023, Kaakouch organized ZC. (**Exhibit B**, Texas Comptroller Business Entity Record.)

45.     Kaakouch manages, controls, and does business through ZC.

46.     Indeed, Kaakouch has openly advertised his affiliation with ZC, stating in a recent LinkedIn post, "I'm happy to share that I'm starting a new position as President at Z & Co., LLC!" (**Exhibit C**, LinkedIn Profile.)

47.     Kaakouch registered or caused to be registered a web domain for ZC (*i.e.*, zandco-llc.com) that is now active and operational.

48.     On ZC's website, ZC holds itself out as offering various engineering services, such as "land development engineering;" "[h]ydrologic and [h]ydraulic modeling;" and "integrated planning, design, technical and program management services." (**Exhibit D**, "What We Do" Page.)

49.     These services are substantially similar, if not identical, to the kinds of services that PEA offers in and through its Houston office.

50.     ZC also advertises that it does business with various clients in the Texas market. (**Exhibit E**, "Clients/Projects" Page.)

51.     ZC is an *alter ego* for, or an extension of ZCS, and upon information and belief, Defendants are using confidential and restricted information from ZCS, to operate ZC.

52.     By offering engineering services in the state of Texas, as alleged above, Defendants have competed, and are directly competing with PEA in violation of §10.1.A and/or C of the Purchase Agreement.

### *Kaakouch Solicits PEA's Clients and Employees*

53.     Defendants have contacted or solicited at least two of PEA's clients.

54.     Indeed, on the "Clients/Projects" tab of the ZC's website, it claims a business relationship with two of PEA's current clients.  (*Id.*)

55.     The subject clients were both PEA's clients while Kaakouch worked for PEA.

56.     Defendants are directly or indirectly soliciting and/or contacting PEA's clients, thereby diverting for themselves contracts or business opportunities that would otherwise be available to PEA.

57.     By contacting and/or soliciting PEA's clients, Defendants have violated, and are violating § 10.1.A of the Purchase Agreement.

58.     Furthermore, Defendants solicited Woods, a then-current employee of PEA, to work at ZC.

59.     Defendants have attempted to recruit several of PEA's other employees to work for ZC since Kaakouch's resignation from PEA.

60.     By contacting, soliciting, approaching for the purposes of offering employment, and/or actually hiring PEA's employees to work for ZC, Defendants have violated, and are violating § 10.1.B of the Purchase Agreement.

### *Irreparable Harm from Defendants' Conduct*

61.     Defendants' competition with, and solicitation of PEA's clients and employees has caused— and will continue to cause—irreparable harm to PEA that cannot be compensated by money damage alone. Such harm includes, but is not limited to, the loss of goodwill (including the goodwill that PEA purchased from Defendants), damage to PEA's client and employment relationships, and loss of future business opportunities.

### COUNT I – BREACH OF CONTRACT

62.     PEA incorporates each of its previous allegations as though fully set forth herein.

63.     The Purchase Agreement is a binding contract between PEA, on one hand, and Defendants, on the other hand.

64.     Under the Restrictive Covenants in the Purchase Agreement, Defendants are prohibited, for at least another three (3) years, from competing with PEA. (Exhibit A, at § 10.1.A-B.)

65.     Defendants have breached the Restrictive Covenants by, *inter alia*:

  a.     Forming and operating a competing business that competes with PEA;

  b.     Contacting and/or soliciting PEA's clients and/or suppliers;

  c.     Contacting, soliciting, approaching for the purpose of offering employment, and/or actually hiring PEA's employees; and/or

  d.     Using or disclosing nonpublic information of ZCS.

66.     Upon information and belief, Defendants have committed other breaches of the Purchase Agreement and/or the Restrictive Covenants, the full extent of which will be revealed through discovery.

67.     As Defendants acknowledged and agreed when they executed the Purchase Agreements, the Restrictive Covenants are reasonable in duration and all other respects and necessary for the protection of PEA. (*Id.* § 10.1.D(i), (ii).)

68.     Moreover, the parties agreed that, but for Defendants' agreement to the Restrictive Covenants, PEA would not have entered into the Purchase Agreement. (*Id.* § 10.1.D(iii).)

69.     PEA has suffered damages as the direct and proximate result of the breaches discussed herein, including injuries to its goodwill, business opportunities, and client/employee relationships for which money alone cannot compensate PEA.

70.     Furthermore, injunctive relief in this case is proper because the parties

agreed in the Purchase Agreement that money damages would be inadequate to

compensate PEA for Defendants' breach of any of the Restrictive Covenants, and

PEA is entitled to injunctive relief to prevent further violations. (*Id.* § 10.1.E.)

71.     In the event PEA prevails in this suit, PEA is also entitled to its costs

and reasonable attorneys' fees. (*Id.* § 14.14.)

**WHEREFORE**, PEA respectfully requests a judgement in its favor and

against Defendants as follows:

1.     Preliminary and permanent injunctive relief barring Defendants and

anyone acting in concert with them, including ZC and its employees, agents, or

representatives, from, and for a period of at least three (3) years:

> (a)     competing, or operating a business that competes, directly or indirectly, with PEA in the state of Texas, Michigan and/or anywhere else where PEA does business;

> (b)     contacting, soliciting, approaching for the purposes of employment, actually hiring, or continuing to employ any representative, contractor, agent, or person who has worked for PEA on or after the execution of the Purchase Agreement;

> (c)     contacting, soliciting, or otherwise doing business with any client or supplier of PEA; and

> (d)     using or disclosing any nonpublic information of ZCS and/or PEA.

2.     Awarding money damages in an amount to be proven at trial, but

exceeding $75,000.00, exclusive of non-contractual costs and interest;

3.     Awarding PEA's costs and reasonable attorneys' fees in bringing this action or as otherwise recoverable, as expressly permitted under Section 14.14 of the Purchase Agreement; and

4.     Any such other and further relief as the Court deems just and proper.

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

Dated: April 25, 2023          By:     */s/ Stuart Schwartz*
                                       Stuart Schwartz (P62752)
                                       27777 Franklin Rd., Ste. 2500
                                       Southfield, MI 48034
                                       (248) 351-3000
                                       sschwartz@taftlaw.com
                                       *Attorneys for Plaintiff*

## DECLARATION AND VERIFICATION

David N. Hunter, Chief Operating Officer of Professional Engineering Associates, Inc., hereby declares under penalty of perjury that he has read the foregoing Verified Complaint and knows the contents thereof and that the same is true to the best of his knowledge, information and belief.

Executed on this 24ᵗʰ, day of April 2023.

_____
David N. Hunter, as Chief Operating Officer
of Professional Engineering Associates, Inc.