UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PROFESSIONAL ENGINEERING ASSOCIATES, INC., | Case No. 23-cv-10967 |
| | Honorable Sean F. Cox<br>United States District Court Judge |
| Plaintiff, | |
| v. | |
| ZIAD KAAKOUCH;<br>Z.K. CONSULTING SERVICES, LLC, | |
| Defendants.<br>_____/ | |

**<u>OPINION AND ORDER DENYING<br>DEFENDANT'S MOTION TO CHANGE VENUE</u>**

This is a non-compete clause dispute. In 2021, Plaintiff, Professional Engineering Associates, Inc. ("Professional Engineering"), acquired Defendant Ziad Kaakouch's ("Kaakouch") consulting firm, co-Defendant Z.K. Consulting Services, LLC. As part of the acquisition, Defendants signed an Asset Purchase Agreement (the "Purchase Agreement") which included restrictive covenants and a forum selection clause.

Following the acquisition, Professional Engineering hired Kaakouch as a business director and allowed him to purchase stock in the company through a Shareholder's Agreement. The Shareholder's Agreement contained its own restrictive covenants, a forum selection clause, and an integration clause.

In 2023, Kaakouch left Professional Engineering. He immediately started a competing engineering firm and began to solicit Professional Engineering's employees and clients.

1

Kaakouch's actions prompted Professional Engineering to file a Complaint and a Motion for a Preliminary Injunction in this Court.

Before the Court could rule on Professional Engineering's Motion, Kaakouch filed the instant Motion to Transfer Venue (ECF No. 18). Pursuant to E.D. Mich. LR 7.1 (f)(2), the Court finds this Motion has been adequately briefed and will rule without hearing.

For the reasons set forth below, Kaakouch's Motion is **DENIED**. The Court will enforce the forum selection clause in the Purchase Agreement and keep this case in Michigan.

## BACKGROUND

### A. Procedural Background

On April 25, 2023, Professional Engineering filed a Complaint against Defendants Kaakouch and Z.K. Consulting Services, LLC, properly alleging diversity jurisdiction. (ECF No. 1).

Professional Engineering's Complaint contains one count—breach of contract. (ECF No. 1 at 13). Professional Engineering alleges Kaakouch breached the restrictive covenants in the Purchase Agreement when he voluntarily resigned from Professional Engineering, started a rival company in the same area, and solicited Professional Engineering's employees and clients. *Id*.

On May 3, 2023, Professional Engineering filed a "Motion for a Temporary Restraining Order and Preliminary Injunction." (ECF No. 6).

On May 9, 2023, the Court held a status conference with counsel from both parties. On the same day, the parties stipulated to maintain the status quo until the Court has an opportunity to hear argument on Professional Engineering's Motion. The Court affirmed the stipulation in an Order dated May 15, 2023. (ECF No. 15).

On June 1, 2023, Kaakouch filed the instant Motion to Change Venue. (ECF No. 18). In response, the Court adjourned, without date, the hearing on Professional Engineering's Motion so it could rule on Kaakouch's Motion to Transfer.

**B. Factual Background**

Professional Engineering provides civil engineering and service offerings to land development construction projects. (ECF No. 1 ¶ 2). Professional Engineering has offices throughout Michigan and an extension office in Houston, Texas. *Id*.

On March 31, 2021, Professional Engineering entered into a Purchase Agreement with Kaakouch to acquire Z.K. Consulting Services, LLC, which was wholly owned by Kaakouch. (ECF No. 1 ¶ 3). The Purchase Agreement contains a forum selection clause electing Michigan as the forum of choice for all litigation. (ECF No. 6-4 at PageID 177). The Purchase Agreement also bound Kaakouch and his consulting firm to certain non-compete, non-solicitation, and non-disclosure restrictions. (ECF No. 1 ¶ 5).

Relevant to this Motion, the Purchase Agreement's forum selection clause states:

<u>14.4. Governing Law; Venue.</u>

This Agreement **shall be governed by the Laws of the State of Michigan**, without regard to its conflicts of law principles. The parties hereby irrevocably and unconditionally consent to **submit to the exclusive jurisdiction of the courts of the State of Michigan and of the United States of America located in the Eastern District of the State of Michigan** for any actions, suits, or proceedings arising out of or relating to this Agreement and the transactions contemplated hereby (and agree not to commence any action, suit, or proceeding relating thereto except in such courts). The parties hereby irrevocably and unconditionally waive any objection to the laying of venue on any action, suit, or proceeding arising out of this Agreement or the transactions contemplated hereby in the courts of the State of Michigan or the United States of America located in the Eastern District of the State of Michigan, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such action, suit, or proceeding brought in any such court has been brought in an inconvenient forum.

(ECF No. 27-2 at PageID 623) (emphasis added).

3

In addition to acquiring Kaakouch's company, Professional Engineering hired Kaakouch as its Regional Business Director in charge of Professional Engineering's Houston office. (ECF No. 1 ¶ 6).

Subsequently, Professional Engineering also sold Kaakouch a minority ownership interest in Professional Engineering pursuant to a Shareholder's Agreement. (ECF No. 1 ¶ 38). The Shareholder's Agreement contains different restrictive covenants, a different forum selection clause, and an integration clause. (*See* ECF No. 16-2 at PageID 297, 300).

Relevant to this Motion, the integration and forum selection clauses state:

> 19.6. Entire Agreement; Amendment.
>
> This Agreement, which includes the attached Exhibits, constitutes the entire agreement between the parties with respect to its subject matter and supersedes all other agreements, whether oral or written, between the parties with respect to such subject matter, including, without limitation, the Original Agreements. This Agreement may be amended only by a written agreement executed by all of the parties.
>
> 19.11. Governing Law; Forum Selection.
>
> This Agreement will be governed by and construed in accordance with the **laws of the State of Michigan**, without regard to any conflict of laws or choice of law provisions. **The parties hereby agree that, except for actions seeking specific performance under Section 12 or Section 16, any legal or equitable action or proceeding with respect to this Agreement shall be brought only in any court sitting in Oakland County, State of Michigan, or the United States District Court for the Eastern District of Michigan**, and each of the parties hereby submits to and accepts generally and unconditionally the jurisdiction of those courts with respect to such party and such party's property and irrevocably consents to the service of process in connection with any such action or proceeding by personal delivery or by the mailing thereof by registered or certified mail, postage prepaid at the party's last known address or at such other address as may be otherwise supplied from time to time in writing.

(ECF No. 27-3 at PageID 639) (emphasis added).

4

On March 8, 2023, Kaakouch resigned from Professional Engineering. (ECF No. 1 ¶ 7). Shortly after Kaakouch resigned, on March 24, 2023, he formed Z & Co., LLC, which directly competes with Professional Engineering. (ECF No. 1 ¶ 8, 44).

Around the same time, Kaakouch filed a complaint against Professional Engineering in Harris County, Texas (the "Texas lawsuit"). He seeks a declaratory judgment stating, among other things, the restrictive covenants in Professional Engineering's Purchase Agreement are unenforceable as a matter of law. (ECF No. 1 ¶ 9). Professional Engineering immediately removed the Texas lawsuit to the United States District Court for the Southern District of Texas (Case No. 23-01518), where the litigation is ongoing. (ECF No. 1 ¶ 11).

Kaakouch now moves to transfer this case to Texas, under 28 U.S.C. § 1404(a), arguing it is a more convenient forum. (*See* ECF No. 18).

## STANDARD OF DECISION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have "broad discretion" in determining whether to transfer a case pursuant to § 1404(a). *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *see also Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (stating the "discretion to be exercised [by courts] is broader" under § 1404(a) than under the doctrine of forum non conveniens).

On a § 1404(a) motion, the moving party bears the burden of demonstrating that "fairness and practicality strongly favor the forum to which transfer is sought." *Thomas v. Home Depot U.S.A., Inc.*, 131 F.Supp.2d 934, 936 (E.D. Mich. 2001) (quoting *Rowe v. Chrysler Corp.*, 520 F. Supp. 15, 16 (E.D. Mich. 1981)). The moving party must make this showing by a preponderance of the evidence. *Amphion Inc. v. Buckeye Elec. Co.*, 285 F.Supp.2d. 943, 946–47 (E.D. Mich.

5

2003) (Gadola, J.) (citing *Thomas,* 131 F.Supp.2d at 936; *Int'l Union, U.A.W. v. Aluminum Co. of Am.,* 875 F. Supp. 430, 433 (N.D. Ohio 1995)).

## ANALYSIS

Kaakouch asserts that a proper application of § 1404(a) compels transfer of this case to Texas. He presents two arguments for the transfer. Firstly, he contends the Shareholder's Agreement, rather than the Purchase Agreement, dictates the appropriate venue for this case. (ECF No. 18 at 6). Secondly, he argues the Court should transfer the case to Texas for the sake of justice and the convenience of the parties and witnesses. *Id*. at 8.

Kaakouch's arguments lack persuasiveness. Following a brief discussion on the applicable law in this diversity action, the Court will address each argument individually.

### I. Choice of Law

As an initial matter, the Court must determine which law to apply. Courts sitting in diversity apply state substantive law and federal procedural law. *Hanna v. Plumer,* 380 U.S. 460, 465 (1965).

Where state law is required, the Court will use Michigan state law because both the Purchase Agreement and the Shareholder's Agreement contain a Michigan choice of law provision. (*See* ECF No. 6-4 at PageID 177); (ECF No. 16-2 at PageID 300). Further, in his Motion, Kaakouch did not raise concerns with the choice of law provision in either agreement. Therefore, regardless of which agreement ultimately governs this dispute, Kaakouch agreed to use Michigan state law.[1]

---

[1] Traditionally, under Michigan's choice-of-law rules, courts apply the law of the state with the most significant relationship to the contract and claims. *Johnson v. Ventra Group, Inc.,* 191 F.3d 732, 741 (6th Cir. 1999). The state with the most significant relationship in this case, arguably, is Texas. Nonetheless, the Court sees no issue in applying Michigan law as "Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law

The Court must also determine whether to apply state or federal law when determining whether to enforce the forum selection clause. When a party moves, under § 1404(a), to transfer a case based on a forum selection clause, the federal statute governing transfer motions controls the clause's interpretation. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29–30 (1988); *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Therefore, the Court will use federal law to determine whether to enforce either of the agreements' forum selection clauses.

## II.   Effect of the Shareholder's Agreement on the Purchase Agreement

Turning now to the substance of Kaakouch's Motion, the Shareholder's Agreement has no impact on the Purchase Agreement. Kaakouch argues the forum selection clause in the Purchase Agreement is invalid due to his subsequent signing of the Shareholder's Agreement, which he claims supersedes the Purchase Agreement. (ECF No. 18 at 6).

The logic behind Kaakouch's argument is as follows: the Shareholder's agreement contains a provision stating it "supersedes all other agreements" with respect to the subject matter of the agreement. (ECF No. 16-2 at PageID 300). The Shareholder's Agreement further contains restrictive covenants and a forum selection clause wherein Michigan is not a mandatory forum in certain circumstances. *Id*. The Purchase Agreement also contains restrictive covenants and a forum selection clause wherein Michigan is always the mandatory forum. (*See* ECF No. 6-4 at PageID 172).

Since both agreements contain restrictive covenants and forum selection clauses, Kaakouch contends the Shareholder's Agreement supersedes the Purchase Agreement with respect to those provisions. (ECF No. 18 at 7). Accordingly, Kaakouch claims, "pursuant to [the

---

provisions." *Barshaw v. Allegheny Performance Plastics, LLC*, 334 Mich. App. 741, 748, 965 N.W.2d 729, 734 (2020) (quoting *Turcheck v. Amerifund Fin., Inc.*, 272 Mich. App. 344, 48).

forum selection clause in] the Shareholder's Agreement, the case could have been brought in the Southern District of Texas…." *Id*.

Kaakouch's view of the two agreements is too narrow, and he offered no caselaw supporting his interpretation.

Under Michigan contract law, when parties enter a subsequent agreement completely covering the same subject matter, but containing inconsistent terms, the effect is to supersede and rescind the earlier contract. *See Lawyers Title Ins. Corp. v. First Federal Sav. Bank & Trust,* 744 F. Supp. 778, 783 (E.D. Mich. 1990). However, if the subsequent agreement does not completely cover the same subject matter, then the provisions in the original agreement still control (absent a distinct provision such as a merger clause). *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 616 (6th Cir. 2014) (citing *Nib Foods, Inc. v. Mally,* 70 Mich. App. 553, 246 N.W.2d 317, 321 (1976)).

Here, the Shareholder's Agreement does not supersede the Purchase Agreement because the agreements concern different parties and different subject matter. Parties to the Purchase Agreement were Professional Engineering, Kaakouch, and Z.K. Consulting Services. (ECF No. 27-2 at PageID 626). In contrast, parties to the Shareholder's Agreement included Professional Engineering, Kaakouch, multiple additional shareholders, and did not include Z.K. Consulting Services. (ECF No. 27-2 at PageID 642).

Further, the subject matter of the agreements is different. The Purchase Agreement covered the one-time acquisition of a business (*See* ECF No. 27-2), while the Shareholder's Agreement concerned the rights and duties of those owning stock in Professional Engineering. (*See* ECF No. 27-3).

Lastly, the integration clause in the Shareholder's Agreement does not help Kaakouch. The clause states:

> <u>19.6. Entire Agreement; Amendment</u>.
>
> This Agreement, which includes the attached Exhibits, constitutes the entire agreement **between the parties with respect to its subject matter** and supersedes all other agreements, whether oral or written, **between the parties with respect to such subject matter**, including, without limitation, the Original Agreements. This Agreement may be amended only by a written agreement executed by all of the parties.

(ECF No. 16-2 PageID 300) (emphasis added).

The clause is explicit. The Shareholder's Agreement only supersedes other agreements between the same parties on the same subject matter. As discussed above, the Purchase Agreement was formed between different parties about different subject matter. The integration clause does not supersede the Purchase Agreement.

### III. § 1404(a) Determination

Having found the Shareholder's Agreement does not supersede the Purchase Agreement, the Court must now determine whether to enforce the Purchase Agreement's forum selection clause or grant Kaakouch's Motion to Transfer.

In deciding a motion to transfer venue, the Court must determine: 1) whether the action could have been brought in the proposed transferee district, 2) whether a transfer would promote the interests of justice, and 3) whether a transfer would serve the parties' and witnesses' convenience. *United States v. P.J. Dick, Inc.*, 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000); *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F.Supp.2d 722, 728-29 (E.D. Mich. 2006). Traditionally, courts consider public and private interest factors such as:

> 1) the convenience of the parties and witnesses; 2) the location of documents and the relative ease of access to sources of proof; 3) the locus of the operative facts; 4) availability of process to compel attendance of witnesses; 5) cost of obtaining witnesses; 6) the forum's familiarity with the governing law; 7) the weight

accorded to the plaintiff's choice of forum; 8) trial efficiency; and 9) the interests of justice.

*Perceptron*, 423 F.Supp.2d at 729.

The presence of a valid forum selection clause, however, requires a district court to adjust its § 1404(a) analysis in three ways. Two of which are relevant here:

> First, the plaintiff's choice of forum merits no weight, and the plaintiff, as the party defying the forum-selection clause, has the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. **Second, the court should not consider the parties' private interests aside from those embodied in the forum-selection clause; it may consider only public interests.** Because public-interest factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 51 (2013) (citation omitted) (emphasis added).

### a. Validity of the Forum Selection Clause

First, to determine the proper § 1404(a) framework to apply, the Court must decide if the Purchase Agreement's forum selection clause is valid and enforceable. In the Sixth Circuit, when evaluating the enforceability of a forum selection clause, courts looks to the following factors: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.3d at 828.

Kaakouch does not claim fraud or duress, or that Michigan would be ineffective or unfairly handle the suit. The only issue is factor three—whether Michigan is "so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust."

Kaakouch has failed to meet this high burden. "[M]ere inconvenience of the party seeking to avoid the clause" is insufficient to satisfy the third factor. *Id*. In fact, the Sixth Circuit

10

has held, absent showing a party will be exploited or unfairly treated, enforcement of a forum selection clause is reasonable. *Id*. Kaakouch's claims fall well short of showing he will be exploited or unfairly treated in Michigan. Therefore, the forum selection clause is valid.

### b. Modified § 1404(a) Analysis Under *Atl. Marine*

Since the forum selection clause in the Purchase Agreement is valid and enforceable, the Court will apply the § 1404(a) factors, as modified by *Atl. Marine Const.*, when assessing Kaakouch's Motion.

#### i. Factor 1—The Action Could Have Been Brought in Texas

Absent a mandatory forum selection clause, the case could be brought in Texas. Diversity subject matter and personal jurisdiction would be proper in Texas. Kaakouch is a Texas citizen, Professional Engineering is a Michigan corporation with its principal place of business in Michigan, and personal jurisdiction would be proper as the events spurring this matter occurred in Texas. (*See* ECF No. 1 at PageID 5, 6).

#### ii. Factor 2—The Interests of Justice

The interests of justice favor denying Kaakouch's Motion for two reasons. First, the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const*, 571 U.S. at 63 (citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 33 (1955)).

Second, as both parties note, the interest of judicial economy favors consolidating this case with the Texas lawsuit.[2] The place to consolidate the cases, however, is Michigan.

---

[2] Kaakouch's only argument about the interests of justice is this suit should be consolidated with the Texas Lawsuit in Texas because jurisdiction is proper, and the two cases invoke the same parties and issues. (ECF No. 18 at 10-12).

11

Traditionally, under the "first-to-file" doctrine, the court in which the first suit was filed should proceed to judgment. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). When the first filed case is a declaratory judgment, however, there is a presumption the declaratory judgment action be "dismissed or stayed in favor of the substantive suit." *Id*. at 552. The Texas lawsuit is a declaratory judgment action. (*See* ECF No. 27-5). Therefore, even though it was filed first, the Texas lawsuit should be stayed or dismissed in favor of the instant substantive suit.

      iii.    **Factor 3—Convenience of Granting Transfer**

Factor 3 also favors denying Kaakouch's Motion. When a valid forum selection clause is at the center of a § 1404(a) motion, courts only consider public interest factors when deciding whether to grant transfer. *Atl. Marine Const.*, 571 U.S. at 51.

Public interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. at 63 n.6.

As stated above, the Court finds the forum selection clause in the Purchase Agreement is valid. Therefore, the Court will not consider any arguments concerning private interest factors. *Atl. Marine Const.*, 571 U.S. at 51.

Kaakouch makes two such arguments. Kaakouch argues this case should be transferred to Texas because litigating in Michigan would be "inconvenient for both Defendants and their

respective employees, representatives, and/or agents." (ECF No. 18 at 10). [3] Kaakouch also argues for transfer because all relevant documents and evidence are in Texas. *Id*.

Ease of obtaining witnesses and availability of evidence are private interest factors and carry no weight in this scenario. *See Atl. Marine Const.*, 571 U.S. at 63 n.6 (listing "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses…" as examples of private interest factors).

Additionally, Kaakouch argues "the fact that Plaintiff chose to litigate in a venue away from the situs of the business at issue tips the balance strongly in favor of transfer more than in the case where Plaintiff's choice of forum is highly convenient." (ECF No. 18 at 9). In support of his contention, Kaakouch cites *Mt. Hawley Ins. Co. v. McKinley, Inc.*, No. 19-11418, 2019 WL 6124778 (E.D. Mich. Nov. 19, 2019).

*Mt. Hawley* cuts against Kaakouch. In *Mt. Hawley*, this Court stated, "[w]here a plaintiff chooses to litigate away from its principal place of business, the quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer necessarily will be less than in the case where plaintiff's choice of forum is highly convenient to plaintiff." *Id*. at *5.

Professional Engineering is a Michigan corporation with its principal place of business in Michigan. (ECF No. 1 ¶ 17). Michigan is almost assuredly the most convenient place for Professional Engineering to litigate, which explains why it bargained for Michigan as the chosen forum in both the Purchase Agreement and the Shareholder's Agreement. Under *Mt. Hawley*, the Court gives Professional Engineering's elected forum great deference.

---

[3] Even if witness convenience were a proper consideration, it does not favor Kaakouch as much as he claims. Professional Engineering is a Michigan corporation, most of its workforce is in Michigan, and at least two of its critical witnesses are Michigan residents. (ECF No. 27 at 10 n.5).

Finally, Kaakouch's only claim even tangentially related to public interest factors is that Texas is the "situs of the business at issue…." (ECF No. 18 at 9). Since most of this dispute is based on interactions in Texas, litigating the case in Texas serves the public interest of allowing Texas to adjudicate a local dispute at home.

On its own, however, Texas's potential desire to adjudicate a local dispute is insufficient to override a valid forum selection clause. Proper application of § 1404(a) mandates a forum-selection clause be "given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. at 60 (quoting *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 33). This is not an exceptional case. The interests of justice and the convenience of the parties are best served by denying Kaakouch's Motion.

## CONCLUSION

For the reasons stated above, **IT IS SO ORDERED** that Kaakouch's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is **DENIED**. The Shareholder's Agreement does not supersede the Purchase Agreement. The Purchase Agreement contains a valid forum selection clause. And proper application of § 1404(a) requires the Court to honor the clause.

**IT IS SO ORDERED.**

Dated:  June 20, 2023               s/Sean F. Cox
                                    Sean F. Cox
                                    U. S. District Judge


I hereby certify that on June 20, 2023, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                    s/Jennifer McCoy
                                    Case Manager